UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| EDWARD L. THOMAS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:09-cv-1274-TAB-LJM |
| | ) | |
| JVC HENDRICKS BOX CO., INC., | ) | |
| Defendant. | ) | |

**ORDER ON PLAINTIFF'S SUMMARY JUDGMENT MOTION**

**I.    Introduction**

The parties in this discrimination case dispute the occurrence of a conversation about race discrimination and whether Plaintiff Edward Thomas made a phone call reporting an absence. Because Thomas's claims hinge on the occurrence and content of these events, summary judgment is largely inappropriate.

**II.    Background**

Thomas worked at JVC Hendricks Box Co., Inc., a Seymour-based manufacturer of custom cardboard boxes. [Docket No. 40, Ex. 5 at 46:9–18.] Thomas was the only African-American working at JVC. [*Id.* at 188:6–9.] On July 9, 2008, Thomas's supervisor, Rich McNealy, gave Thomas an unsatisfactory performance review and recommended a 30-day performance probation. [Docket No. 40, Ex. 3 at ¶ 11.] McNealy placed Thomas on this probation on August 18, 2008. [*Id.*]

The next morning, Thomas allegedly injured his shoulder and low back at work. [*Id.* at ¶ 14.] Thomas received treatment and met with JVC president Brad Albright on August 20 to discuss worker's compensation. [Docket No. 40, Ex. 1 at ¶¶ 3, 5; Ex. 5 at 104:17–20.]

According to Thomas, they also discussed Thomas's complaint that McNealy was racist and prejudiced. Albright responded that McNealy was "under a bunch of stress and strain" and that Albright would discuss the matter with McNealy. [Docket No. 40, Ex. 5 at 160–61.] Albright denies discussing race with Thomas. [Docket No. 40, Ex. 1 at ¶ 5.]

Thomas remained on medical leave through August and September. On October 2, JVC's controller, Whitney Allman, received a fax from Thomas's doctor indicating that Thomas could return to work without restrictions. [Docket No. 40, Ex. 4 at ¶¶ 4, 38.] Thomas did not return to work on October 3. [*Id.* at ¶ 39.] According to Thomas, he left a voice message on October 3 in McNealy's voice mailbox indicating that he was unable to return to work and was seeking a second medical opinion. [Docket No. 40, Ex. 5 at 146–47.] Allman, who is responsible for JVC's voice mail, denies that McNealy had a voice mailbox and denies receiving any message from Thomas. [Docket No. 40, Ex. 4 at ¶¶ 41–42.] On October 21, having received no word from Thomas, Allman and McNealy concluded that Thomas had violated JVC's no-fault attendance policy, and JVC terminated Thomas. [Docket No. 40, Ex. 4 at ¶¶ 41–42, 49.]

Thomas responded by filing this action alleging race discrimination under Title VII, race discrimination and retaliation under 42 U.S.C. § 1981, and a state law retaliatory discharge claim. [Docket Nos. 25; 26 at ¶ 7.] JVC moved for summary judgment on all of Thomas's claims. [Docket No. 38.]

### III. Discussion

#### A. *Standard of review*

Summary judgment is appropriate if "the movant shows that there is no genuine dispute

2

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At summary judgment, the Court construes all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Omnicare, Inc. v. UnitedHealth Group, Inc.*, 629 F.3d 697, 705 (7th Cir. 2011).

B.  *Race discrimination under Title VII and § 1981*

Thomas withdrew his Title VII and § 1981 race discrimination claims. [Docket No. 47 at 1 n.1.] The Court therefore grants summary judgment on these claims.

C.  *Retaliation under § 1981*

Thomas's next claim is for retaliation under § 1981. Thomas asserts his claim under the direct method, so to avoid summary judgment, he must present direct evidence of (1) statutorily protected activity; (2) a materially adverse action taken by JVC; and (3) a causal connection between the two. *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 404 (7th Cir. 2007). There is no dispute that JVC terminated Thomas, but the parties dispute whether Thomas engaged in statutorily protected activity and whether that activity was related to his termination.

   1.  **Statutorily protected activity**

JVC argues that Thomas cannot establish retaliation because he did not engage in protected activity. JVC acknowledges that at the summary judgment stage the Court must accept as true Thomas's alleged August 20 complaint to Albright. However, JVC argues that Thomas made no good faith and objectively reasonable complaint of race discrimination because he offered no reasons for believing McNealy was racist.[1] JVC also argues that the timing of the

---

[1] JVC also moves to strike Thomas's testimony that he complained to at least two co-workers about his treatment. [Docket No. 53 at 9.] Because the Court does not consider Thomas's testimony on this point, the Court need not consider whether it is inadmissible

3

complaint—two days after JVC issued Thomas a 30-day probation—raises suspicion that Thomas was not acting in good faith. [Docket No. 39 at 30.] Thomas responds that an employee's informal complaint of discrimination may constitute protected activity and that he had attempted to raise his concerns with Albright on at least two prior occasions. [Docket No. 47 at 12–13.]

To survive summary judgment on a retaliation claim, Thomas must raise a genuine issue of material fact that he engaged in statutorily protected activity. *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 727 (7th Cir. 2003) (affirming summary judgment on retaliatory transfer claim because employee did not complain of discrimination to employer). Statutorily protected activity includes informal complaints of race discrimination to management. *Casna v. City of Loves Park*, 574 F.3d 420, 426 (7th Cir. 2009) (holding that the question "Aren't you being discriminatory?" was statutorily protected activity). Such complaints need not include specific magic words but must indicate that race was an issue. *Sitar,* 344 F.3d at 727.

Thomas presented evidence that he complained to Albright about race discrimination on August 20:

> I indicated to him that, that I was blessed with this job, you know, and that [McNealy] is a racist, that he was prejudice. He has not honored any of my, my work restrictions. He hasn't tried to keep me in a job that's more promising of a promotion that I was promised.
>
> To my understanding, he came to the hospital to see me, according to [Albright]. He was shocked that he didn't come see me, but he did not come and see me and that he was having me do things that he didn't have other people doing so . . . .

[Docket No. 40, Ex. 5, 160:19–161:7.] Thomas also presented evidence that he was the only

---

hearsay.

black employee at JVC. [*Id.* at 188:6–9.] Together, this evidence—that Thomas complained to Albright that McNealy was a racist and was prejudiced, and that McNealy had Thomas (the only black employee at JVC) do things that he did not require of white employees—is sufficient at the summary judgment stage to support Thomas's claim that he engaged in protected activity.

### 2. Causal connection

Next, JVC argues that Thomas has failed to prove that his complaint of race discrimination is related to his termination.[2] JVC asserts that it terminated Thomas because he

---

[2]JVC also argues that Thomas betrayed his own claim by testifying in deposition that race—not retaliation—was the reason for his termination. [Docket No. 39 at 31.] JVC relies on the following testimony:

Q: Why, why do you think you were fired?
A: Well, because, as they put it down there, they put it down as for one of the reasons. I'm, I'm, I'm sure that the reason I was fired is because of my race.
Q: I asked you previously what acts of discrimination were taken against you because of your race.
A: Yes, and you asked me that along with other questions. And you asked me this now, this question pertaining to race so you asked me did I think that it was because of my race. And I've told you yes, that I think it was the reason for them to retaliate was, I'm saying was that a retaliation against me. And now you ask me do I think it's because of my race and I said yes, I do think it's because of my race.
Q: Why do you think that it was because of your race?
A: Because of my race.
Q: But what makes you think that race was a factor?
A: All of this.
Q: All of this what?
A: All of these charges that they brought up against me, my injury, not supporting my injury, not supporting my worker's comp, not supporting me at all.
Q: But how do the facts that that they did those things relate to your race?
A: Well, I answered that question, I think. Like I said, I'm the only black person there.
Q: Other than the fact that you were the only black person there, what else?
A: Nothing.

5

abandoned his job. But Thomas presents enough evidence to raise genuine issues about key facts: whether the termination decision-makers knew of his protected activity, whether the timing of events suggests a causal link, and whether the stated reason for his termination is a pretext. [Docket No. 47 at 15–20.] Specifically, Thomas presents evidence that he told Albright that McNealy was a racist and was prejudiced, and that Albright responded that he would speak with McNealy, who was involved in the termination decision. [Docket No. 40, Ex. 4 at ¶ 44.] Next, Thomas points out that he was terminated only two months after his complaint and cites case law in which longer time lapses, along with other evidence, have supported causation. [Docket No. 47 at 19 (citing *Weathersby v. Astra USC, Inc.*, No. 1:08-cv-615-LJM-TAB, 2010 WL 1088673, at *12–13 (S.D. Ind. Mar. 19, 2010) (three months)).]

Finally, Thomas presents evidence that he left a voice mail for McNealy on October 3 regarding his absence, which, though not compliant with JVC's written attendance policy requiring direct supervisor contact, conformed with JVC's practice. [Docket No. 40, Ex. 5 at 180:1–3 ("I spoke to the voice mail just like we always have been done and other employees have done and been excused.").] This testimony undermines JVC's stated nondiscriminatory reason for Thomas's termination. JVC responds that Thomas could not have left the October 3 voice mail because McNealy had no personal voice mailbox and Allman found no voice mail

---

[Docket No. 40, Ex. 5 at 199:2–120:10.] Unfortunately, Thomas did not respond to this argument. Elsewhere in his deposition, Thomas answered that he was asserting a retaliation claim [*Id.* at 189:1–4], but he also expressed confusion about the meaning of retaliation. [*Id.* at 197:12–14 ("I don't understand that question. What do you mean, 'retaliated'? Break it down in laymen terms for me.")] Given this mixed testimony, the Court declines to find that Thomas relinquished his retaliation claim with the testimony JVC cites, particularly given that in the quoted deposition testimony Thomas used the word "retaliate" and the phrase "retaliate against me."

6

from Thomas in JVC's general mailbox. JVC's evidence creates an interesting factual dispute, but at summary judgment, the Court must credit Thomas's version. Because Thomas raised factual disputes about his August 20 complaint and his October 3 phone call, summary judgment is inappropriate on this claim.

    *C.*    Frampton *claim*

Thomas's final claim is a state law claim for retaliatory discharge, commonly called a *Frampton* claim after the Indiana Supreme Court case identifying the cause of action. *Frampton v. Cent. Ind. Gas Co.*, 297 N.E.2d 425 (Ind. 1973). Under *Frampton*, "[r]etaliatory discharge for filing a workmen's compensation claim is a wrongful, unconscionable act and should be actionable in a court of law." *Id.* at 428. The question of retaliatory motive is one for the trier of fact, and summary judgment is only appropriate if the evidence could not lead any reasonable trier of fact to find a retaliatory motive. *Powdertech, Inc. v. Joganic*, 776 N.E.2d 1251, 1261–62 (Ind. Ct. App. 2002). To establish retaliatory motive, the employee must show more than the filing of a worker's compensation claim and a discharge. *Id.* at 1262. Rather, the employee must present evidence that filing a worker's compensation claim caused the discharge, such as temporal proximity or evidence that the employer's asserted lawful reason for the discharge is a pretext. *Id.*

The parties agree that Thomas filed a worker's compensation claim and that he was discharged. Therefore, to survive summary judgment on this claim, Thomas must show a factual dispute over causation. As discussed in connection with Thomas's § 1981 retaliation claim, Thomas has identified such a dispute, specifically involving evidence of temporal proximity and pretext. As to temporal proximity, Thomas presented evidence that he notified JVC on October

7

3 of his intent to seek an independent medical exam—a statutory right under Indiana's Worker's Compensation Act—and he was terminated on October 21. An eighteen-day window is sufficiently narrow to support causation. *See Pepkowski v. Life of Ind. Ins. Co.*, 535 N.E.2d 1164, 1168 (Ind. 1989) (six-month lapse not fatal to retaliation claim when combined with evidence of pretext); *Markley Enters., Inc. v. Grover*, 716 N.E.2d 559, 565 (Ind. Ct. App. 1999) (same). Thomas also points to his October 3 call as evidence that JVC's termination for job abandonment was a pretext for retaliation. JVC rebuts these arguments by maintaining that it received no phone message and that it believed Thomas's leave was over. But these rebuttals rest on a disputed fact—whether Thomas left a voice message on October 3. At this stage, the Court must accept Thomas's version. Summary judgment on Thomas's *Frampton* claim is therefore denied.

## IV. Conclusion

JVC's summary judgment motion [Docket No. 38] is granted in part and denied in part. The Court grants summary judgment on Thomas's race discrimination claims under Title VII and § 1981. However, Thomas identified genuine factual disputes regarding his § 1981 retaliation and *Frampton* claims, and the Court therefore denies summary judgment on those claims. The trial on these claims remains set for May 9, 2011, and the final pretrial conference remains set for April 22, 2011.

Dated: 03/31/2011

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Copies to:

Kathryn Morgan Cimera
BINGHAM MCHALE LLP
kcimera@binghammchale.com

Duane R. Denton
BINGHAM MCHALE LLP
rdenton@binghammchale.com

Katherine G. Erdel
BINGHAM MCHALE LLP
kerdel@binghammchale.com

Denise K. LaRue
HASKIN LAUTER  & LARUE
dlarue@hlllaw.com

Paul Anthony Logan
HASKIN LAUTER  & LARUE
plogan@hlllaw.com